# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HANI S. TADROS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 10 C 7074 ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) Magistrate Judge Finnegan ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Hani Tadros filed an action seeking to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits under Title II of the Social Security Act. On July 22, 2011, the Court remanded the case to the Administrative Law Judge for further evaluation. Plaintiff now seeks to recover his attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), arguing that the Commissioner's position in defending the ALJ's decision was not "substantially justified." For the reasons set forth below, the Court concludes that the Commissioner's position was not substantially justified because he failed to address evidence from Plaintiff's podiatrist that may have been relevant to the determination of Plaintiff's residual functional capacity. Accordingly, the application for fees is granted.

## BACKGROUND

Plaintiff applied for disability insurance benefits on January 3, 2008, alleging that he became disabled beginning on June 8, 1998 due to headaches, carpal tunnel syndrome, and problems with his back, neck, and upper extremities. The Social Security

Administration denied the application initially and on reconsideration. Following an administrative hearing, an ALJ found that Plaintiff is not disabled because he is capable of performing a significant number of jobs available in the national economy. The Appeals Council denied Plaintiff's request for review, and he sought relief in this Court pursuant to 42 U.S.C. § 405(g). Plaintiff made three main arguments for reversal, asserting that the ALJ erred by (1) discounting or disregarding medical evidence and vocational expert testimony in making a finding on his residual functional capacity (RFC); (2) determining that he could perform his past work where the vocational expert had testified otherwise and where such work was found not to be substantial gainful activity; and (3) incorrectly assessing the weight to be given to the opinion of his chiropractor.

This Court was not persuaded by the vast majority of Plaintiff's arguments. Indeed, the Court rejected four of the five grounds Plaintiff asserted in support of his first argument challenging the RFC determination, and rejected the second and third arguments in their entirety. Ultimately, the Court found that Plaintiff presented one viable ground for reversal — that the ALJ ignored a letter from his podiatrist, Dr. Monif Matouk. As the Court noted, Dr. Matouk's letter opined on a wide range of Plaintiff's alleged medical conditions that are beyond the scope of his qualifications as an acceptable medical source, including a brain aneurysm, arthritis of the cervical spine, nerve entrapment in the upper extremities, migraine headaches, anxiety and depression, post-traumatic stress disorder, and sleep apnea. As a podiatrist, Dr. Matouk is an acceptable medical source solely for the purpose of establishing that Plaintiff suffers from impairments related to his feet and ankles. *See* 20 C.F.R. § 404.1513(a)(4). Therefore, the Court concluded that the ALJ did not err by disregarding Dr. Matouk's opinions as to those conditions beyond his expertise.

However, the ALJ should have considered and addressed Dr. Matouk's statements concerning Plaintiff's foot and ankle conditions, namely his assertions that Plaintiff has diminished range of motion in his foot and ankle joints and nerve damage that makes him unstable and prone to ankle sprains, and that his foot condition generally causes severe pain and edema after less than half an hour of standing or walking. These statements may have been relevant to the RFC determination since they seemingly contradict the RFC's specification that Plaintiff can sit, stand or walk for about two hours in an eight-hour workday. As the Court noted, the ALJ did not mention or discuss Dr. Matouk's letter. It is conceivable that the ALJ found the letter unpersuasive given that it is dated nearly six years after Plaintiff's date last insured (DLI) and does not specify the time frame of any assessment, diagnosis, or course of treatment, nor does the factual record contain any treatment notes, medical records, or other documentation to substantiate the statements in the letter. As the Court noted, to the extent Dr. Matouk's letter was insufficient to allow the ALJ to determine if Plaintiff had any foot or ankle limitations or whether Plaintiff was disabled prior to the DLI, the ALJ was obligated to contact Dr. Matouk by mail or telephone for clarification. *See* 20 C.F.R. § 404.1512(e)(1). This lack of information, together with the ALJ's failure to mention or discuss the letter, rendered this Court unable to determine whether the ALJ adequately considered the relevant statements from Dr. Matouk or whether Plaintiff's alleged foot and ankle impairments produced symptoms that are unaddressed in the RFC. Accordingly, the Court concluded that the ALJ failed to build an accurate and logical bridge from the evidence to his conclusion that Plaintiff is capable of employment, and remanded the matter for consideration of the evidence related to Plaintiff's foot and ankle conditions only.

On October 19, 2011, Plaintiff filed a timely application asserting that he is the prevailing party in this action and requesting attorneys' fees in the amount of $5,261.25 and costs in the amount of $366.62. (Docs. 28, 29). *See* 28 U.S.C. § 2412(d)(1)(B); *see also Shalala v. Schaefer*, 509 U.S. 292, 302 (1993). The Commissioner does not object to the reasonableness of the amount requested, but argues that Plaintiff is not entitled to any fees at all because the Commissioner's position that Plaintiff was not disabled was substantially justified. (Doc. 31). In his reply memorandum, Plaintiff amended his fee request to include 1.5 hours spent preparing the reply and now seeks a total of $5,520 in attorneys' fees and $366.62 in costs, for a total of $5,886.62. (Doc. 32).

## DISCUSSION

### A. Standard of Review

Under the EAJA, a court may award attorneys' fees to a prevailing party in a civil suit against the government if the government's position was not "substantially justified." 28 U.S.C. § 2412(d)(1)(A). To be eligible to receive a fee award, a party "must show that: (1) [he] was a prevailing party; (2) the Government's position was not substantially justified; (3) there existed no special circumstances that would make an award unjust; and (4) [he] filed a timely and complete application for fees." *Potdar v. Holder*, 585 F.3d 317, 319 (7th Cir. 2009) (quoting *Kholyavskiy v. Holder*, 561 F.3d 689, 690 (7th Cir. 2009)). Here, it is undisputed that Plaintiff filed a timely and complete petition and is a "prevailing party," *see Schaefer*, 509 U.S. at 300, and the Commissioner does not assert that "special circumstances" exist. Thus, the only issue is whether the government's position was substantially justified, meaning "justified to a degree that could satisfy a reasonable

4

person." *Potdar*, 585 F.3d at 319 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). To be substantially justified, a position must have a reasonable basis in both fact and law, and there must be a reasonable connection between the facts and the legal theory. *Stewart v. Astrue*, 561 F.3d 679, 683 (7th Cir. 2009); *Cunningham v. Barnhart*, 440 F.3d 862, 864 (7th Cir. 2006).

The EAJA "'is not an automatic fee-shifting statute,'" so merely prevailing against the government does not entitle a party to fees. *Potdar*, 585 F.3d at 319 (citation omitted); *see also Frost v. Astrue*, 369 F. App'x 721, 722 (7th Cir. 2010) (citing *United States v. Thouvenot, Wade & Moerschen, Inc.*, 596 F.3d 378, 387 (7th Cir. 2010) (holding in the consolidated case of *Park v. Astrue* that a remand does not necessarily entitle a claimant to attorneys' fees); *Berman v. Schweiker*, 713, F.2d 1290, 1295 n.18 (7th Cir. 1983) (holding that "merely because the government loses a case, a presumption does not arise that the government's position was not substantially justified."). Nor does a fee determination rest solely on the number of issues on which the plaintiff prevailed; rather the inquiry involves an assessment of the complete litigation, including pre-litigation conduct and the ALJ's decision, and the Commissioner bears the burden of proving that his position was substantially justified overall. *Stewart*, 561 F.3d at 683-84; *Conrad v. Barnhart*, 434 F.3d 987, 990 (7th Cir. 2006).

**B.    Analysis**

Because the Commissioner prevailed on all challenges to the ALJ's decision except the one concerning Dr. Matouk's letter, the only issue for this fee petition is whether the government was substantially justified in its position that the ALJ did not err by disregarding

the letter.  The Commissioner argues that the ALJ was substantially justified in not discussing Dr. Matouk's letter because the letter post-dated Plaintiff's DLI by nearly six years, it opined on conditions unrelated to podiatry and for which Dr. Matouk did not provide treatment, it stated no specific functional limitations, and it was not supported by other medical evidence in the record.  (Doc. 31 at 4).  All of these points are well-taken.  Nonetheless, the ALJ's failure to discuss this piece of evidence, and the Commissioner's position in defending this omission, is not substantially justified for the reasons discussed below.

Even though much of the letter was outside the scope of Dr. Matouk's expertise as a podiatrist, the ALJ should have discussed those statements concerning conditions for which Dr. Matouk is qualified as an acceptable medical source.  The letter states that Plaintiff suffers from foot and ankle conditions affecting his range of motion and stability, and that those conditions cause pain and edema when he stands and walks, generally within a half hour.  The RFC determination requires an ALJ to consider all functional limitations and restrictions that stem from medically determinable impairments, including those that are not severe.  *See* SSR 96–8p, 1996 WL 374184, *5.  While an ALJ need not discuss every piece of evidence, he must logically connect the evidence to his conclusions.  *See Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010); 516 F.3d 539, 544 (7th Cir. 2008).  Here, Dr. Matouk's assessment of Plaintiff's foot and ankle impairments is at odds with the RFC finding that Plaintiff can sit, stand, and walk for two hours in an eight-hour workday.

The Commissioner relies on *Bassett v. Astrue*, 641 F.3d 859 (7th Cir. 2011), for the proposition that there is flexibility in the requirement that the ALJ articulate an assessment

6

of the evidence, and on this basis contends that the ALJ was substantially justified in the position he took. (Doc. 31 at 4-5). This general proposition is accurate, as the ALJ is not required to itemize every piece of evidence considered and explain its connection to the decision so long as the ALJ's overall reasoning is supported by the record and the law. *See Bassett*, 641 F.3d at 859-860; *Cunningham v. Barnhart*, 440 F.3d 862, 865 (7th Cir. 2006). But this general rule does not support the government's opposition to fees in this case. The *Bassett* case, in which the appellate court affirmed the denial of fees, is factually distinguishable from this case. In *Bassett*, the ALJ committed a non-fatal "articulation error" by failing to explain how she determined the date upon which the claimant's back condition preventing him from working. *Id.* at 860. The Seventh Circuit expressly stated that the error did not taint the Commissioner's position because "in making this mistake the ALJ did not ignore, mischaracterize, selectively cite, or otherwise bungle a significant body of relevant evidence." *Id.; see also Golembiewski v. Barnhart*, 382 F.3d 721, 724-725 (7th Cir. 2004) (reversing denial of fee request because the government mischaracterized medical evidence and ignored other significant evidence concerning plaintiff's limitations). By contrast, the ALJ in this case did just that by ignoring potentially relevant evidence from Plaintiff's podiatrist that may have affected the RFC determination. Likewise, the other cases the Commissioner cites also involved non-fatal articulation errors, not the wholesale ignoring of potentially relevant evidence. *See Cunningham*, 440 F.3d at 864-865; *Stein v. Sullivan*, 966 F.2d 317, 319-320 (7th Cir. 1992).

The Court recognizes the many deficiencies in Dr. Matouk's statements that make the letter less than helpful, including the fact that it post-dates the DLI by nearly six years

7

and does not specify when the symptoms and diagnosis arose. The weight of the statements is further weakened by the absence of any medical records or notes whatsoever from Dr. Matouk, or indeed from any health care provider, to substantiate the symptoms, diagnosis, and treatment, if any, of Plaintiff's foot and ankle ailments. But as the Court previously noted, if Dr. Matouk's letter was insufficient to allow the ALJ to determine if Plaintiff has foot or ankle conditions that limit his ability to work, or whether those conditions pre-date the DLI, then the ALJ was obligated to contact Dr. Matouk for clarification. *See* 20 C.F.R. § 404.1512(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). The ALJ did not do that here. The fact that the ALJ did not contact Dr. Matouk for clarification, and then did not acknowledge, let alone discuss, the pertinent statements, renders the Commissioner's position on this issue not substantially justified. Accordingly, Plaintiff is entitled to an award of $5,520 in fees.[1]

Finally, Plaintiff requests costs consisting of $350 for his filing fee to commence this action and $16.62 for the cost of service of summonses by certified mail. The Equal Access to Justice Act, 28 U.S.C. § 2412, provides for recovery of costs, as enumerated in

---

[1] The Commissioner argues that a fee award, if any, should be paid to Plaintiff, rather than directly to his attorney as he requests, citing the Supreme Court's opinion in *Astrue v. Ratliff*, 130 S.Ct. 2521, 177 L.Ed.2d 91 (2010). (Doc. 31, at 5-6). But *Ratliff* is not applicable in cases, like this one, where the plaintiff assigned the fee award to his attorney in advance, as evidenced here by the representation agreement attached to Plaintiff's motion (Doc. 28-1). *See Mathews-Sheets v. Astrue*, 653 F.3d 560, 565-566 (7th Cir. 2011). Nor does the Commissioner assert that the assignment should be ignored and the fee paid directly to Plaintiff on the ground that he owes a debt to the government. *See id.* Accordingly, the fee award is payable to Plaintiff's attorney pursuant to the representation agreement.

28 U.S.C. § 1920, by a prevailing plaintiff against the United States or any agency or official acting in his or her official capacity. *Id.* at § 2412(a)(1). Section 1920 allows for recovery of the requested costs. *See* 28 U.S.C. § 1920(1), (5). Accordingly, Plaintiff is awarded $366.62 in costs.

## **CONCLUSION**

For the reasons stated above, the Plaintiff's Motion for Award Under the Equal Access to Justice Act is granted in the amount of $5,886.62, consisting of $5,520 in fees and $366.62 in costs.

ENTER:

Dated: January 9, 2012

_____
SHEILA FINNEGAN
United States Magistrate Judge